UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ERIC LANGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-1260 |
| | ) | |
| ROGER E. WALKER, et al, | ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER**

This matter is now before the Court on Defendants' Richard Shute, Wexford Health Sources, Inc., Lois Lindorff and Willard Elyea Motions for Summary Judgment. For the reasons set forth below, Defendants' Motions for Summary Judgment [#35, #37] are GRANTED.

## **BACKGROUND**

This action is brought pursuant to 42 U.S.C. § 1983 against five Defendants from Hill Correctional Center. Plaintiff Eric Langham ("Langham") is an inmate incarcerated within the Illinois Department of Corrections at Hill Correctional Center. He claims a delay in medical care from August 16, 2007 to August 21, 2007 and seeks compensation for the pain and suffering he experienced during those five days.

Langham first recognized a problem on the skin of his right arm about seven to ten days before August 16, 2007. On August 16, 2007, Defendant Dr. Rich Shute ("Dr. Shute") treated Langham at a cardiac and high blood pressure clinic. During his visit, Langham complained about tenderness in his elbow and showed Dr. Shute bumps on his arm. Dr. Shute stated that the swelling was probably due to insect bites, noted the multiple tender scaly papules near the right

elbow, and diagnosed Langham with a small bacterial infection. He prescribed Langham with Bactrim, an antibiotic. Langham was instructed to take the medication twice a day for fourteen days.

Five days later, on August 21, 2007, while working at the prison library, Langham complained of pain on his right arm. Prison officers viewed his arm and called the healthcare unit. Langham was seen again by Dr. Shute. Langham told Dr. Shute that the bumps on this right elbow worsened and that the medication had no effect. Although Langham believed that his condition was due to a spider bite, Dr. Shute assumed that his condition was due to a staph infection since the infection was circulating through prison institution. Dr. Shute told Langham that his bosses instructed him to diagnose any bumps or swelling as insect bites. Dr. Shute noted tender lesions along Langham's forearm, swelling of the elbow, and papules on the exterior side of the right arm. Dr. Shute also recorded Langham's unresponsiveness to general Bactrim medication and planned to transfer him immediately to the Galesburg Cottage Hospital Emergency Room for further evaluation and management.

Later that afternoon, Langham arrived at Cottage Hospital. Lab results indicated that Langham had a staphylococcus aureus infection ("staph infection"). The medical staff also diagnosed him with cellulitis. The staff instructed Langham to stop taking Bactrim and begin a prescription of Levaquin for nine days. Langham was discharged that same evening. He reported feeling better the next day and requested to return to his housing unit by that evening.

Langham maintains that Dr. Shute possessed first hand knowledge of a memo circulated throughout Hill Correctional Center that warned staff of a possible outbreak of methicillin-resistant Staphylococcus aureus ("MRSA"). However, Langham was never diagnosed with MRSA.

Defendant Wexford Health Sources, Inc. ("Wexford") is a private corporation that employs healthcare workers who provide, among other things, healthcare to prison inmates. Langham maintains that Wexford provided subpar medical care to each of its responsible institutions, including Hill Correctional Center. In particular, he alleges that Wexford's policy instructed Dr. Shute to intentionally misdiagnose swelling of arms as spider bites instead of staph infections.

Defendant Lois Lindorff ("Lindorff") is the Health Care Unit Administrator at Hill Correctional Center. Langham alleges that Lindorff, in her supervisory position at Hill Correctional Center, required medical professionals to intentionally misdiagnose medical conditions such as staph infections.

Defendant Willard Elyea ("Elyea") is the former Medical Director for the Illinois Department of Corrections. Langham asserts that Elyea systematically instructed his subordinates to provide minimal or no assistance to save money. Elyea resigned from the Illinois Department of Corrections on January 1, 2007 and was no longer employed at the time relevant to this case.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

In granting a motion for summary judgment under Federal Rules of Civil Procedure Rule 56(c), there must be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That being said, the existence of "some alleged factual dispute," by itself, will not defeat a motion for summary judgment. *Id.* at 247-48. Only disputes over facts that "might affect the outcome of the suit" under the law will preclude granting of summary judgment. *Id.* at 248. A material fact is genuine if the evidence shows that a "reasonable jury

could return a verdict for the nonmoving party." *Id.* A *pro se* complaint "must be liberally construed and is entitled to less stringent scrutiny than those prepared by counsel." *Guiterrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

The Eighth Amendment prohibits the federal government from imposing cruel and unusual punishment. U.S. CONST. amend. VIII. The treatments that prisoners receive in prison are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The government has an obligation to provide medical care to prisoners. *Estelle v. Gambelle*, 429 U.S. 97, 103 (1976). In particular, prison officials must ensure that inmates receive adequate medical care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

A two-pronged test exists in determining whether an Eighth Amendment violation exists in the medical context. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). First, the plaintiff must demonstrate that the alleged deprivation was sufficiently serious. *Farmer*, 511 U.S. at 834.

Second, the plaintiff must show that the defendant acted with deliberate indifference. *Id.* at 828. Deliberate indifference to a prisoner's serious illness or injury states a proper cause of action under § 1983. *Estelle*, 429 U.S. at 105. Deliberate indifference to serious medical needs constitutes "unnecessary and wanton infliction of pain." *Id.* at 104 (quoting Gregg *v. Georgia*, 428 U.S. 153, 173 (1976)). However, the "[i]nadvertent failure to provide adequate medical care" is not the kind of unnecessary and wanton infliction that constitutes deliberate indifference. *Id* at 105. A complaint that a physician that has been "negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106. Therefore, claims of medical malpractice do not amount to an Eighth Amendment violation. *Id.* Instead prisoners must allege acts "sufficiently harmful to evidence deliberate indifference." *Id.*

A prison official cannot be liable under the Eighth Amendment unless "the official knows of and disregards an excessive risk to inmate health." *Farmer*, 511 U.S. at 837. This subjective test requires the official to be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and draw the inference. *Id.* Prison officials who knew of a substantial risk to inmate health may be free of liability if they "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. To survive summary judgment on a § 1983 official-capacity claim, the plaintiff must offer evidence demonstrating the existence of an "official policy, widespread custom, or deliberate act of a county decision-maker of the . . . department." *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007). The plaintiff must also establish that the "official policy or custom was the cause of the alleged constitutional violation." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).

**B. Analysis**

Langham asserted four claims of medical indifference in his § 1983 suit. Of the four defendants, only Dr. Shute had any contact or interaction with Langham. The remaining claims against Defendants Wexford, Lindorff, and Elyea are in their capacities as supervisors or employers. Since none of these three Defendants had any contact with Langham, Langham's claims can be consolidated into two main claims: (1) Claim against Dr. Shute and (2) Claims against Wexford, Lindorff, and Elyea.

1. <u>Claim Against Dr. Shute</u>

Langham alleges that Dr. Shute knew Langham had or should have had a staph infection and misinformed him concerning the diagnosis of his right arm. In support of this claim, he asserts that Dr. Shute was aware of a memo warning him of a possible outbreak of MRSA.

Langham maintains there was a delay in medical treatment in his care, and this delay amounts to a deliberate indifference to a serious medical need in violation of the Eighth Amendment.

A deprivation suffered by a prisoner must first be "sufficiently serious" to constitute a serious medical need. *Farmer*, 511 U.S. at 834. A condition mandating treatment is a serious medical condition. *Guiterrez*, 111 F.3d. at 1373. Here, there is no question that Langham's staph infection required treatment by physicians. Therefore Langham satisfies the first prong of the Eighth Amendment test because his medical need was sufficiently serious.

The second prong of the Eighth Amendment test determines whether a "deliberately indifferent denial of medical care" resulted. *Id.* at 1371. A medical malpractice claim in "the form of an incorrect diagnosis or improper treatment" does not state a claim for an Eighth Amendment violation. *Id.* at 1374 (citing *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996)). Even if the record establishes evidence of "repeated acts of medical malpractice," that evidence by itself, without more, does not constitute deliberate indifference. *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995). In *Guiterrez*, the prisoner received treatment for an infected cyst over a ten-month period and on a few occasions, did not receive prompt treatment. *Id.* The Seventh Circuit held that a six-day waiting period, although it may not be as "prompt as [the plaintiff] may have wished," was not "an unreasonably long delay" considering the physician examined the plaintiff only one week earlier. *Id.* at 1374.

Here, Dr. Shute saw Langham on August 16. When Langham complained of his condition again on August 21, Dr. Shute treated him the same day. While Langham alleges that Dr. Shute improperly diagnosed and improperly treated his condition on August 16, neither claim amounts to an Eighth Amendment claim. Dr. Shute's "almost continuous care" of Langham's arm cannot support a finding of deliberate indifference. *Id.* at 1375.

A delay in treatment may constitute deliberate indifference if the delay "exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). However, a plaintiff must demonstrate that a physician "deliberately disregarded the harm caused by the delay." *Williams v. Guzman*, 346 Fed. Appx. 102, 105 (7th Cir. 2009). In *Williams*, the plaintiff argued that his doctor should have prescribed a different course of treatment and medication. *Id.* at 105. The Seventh Circuit held that courts should defer to a medical professional's "treatment decisions 'unless no minimally competent professional would have so responded under those circumstances.'" *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)).

Here, Langham provides no evidence that Dr. Shute acted unreasonably by choosing not to order Levaquin and instead waiting to see how Langham would initially respond to Bactrim. While a delay in treating medical conditions may support a deliberate-indifference claim, Langham did not show that Dr. Shute "deliberately disregarded the harm caused by the delay." *Id.* at 105. As soon as Dr. Shute realized the initial prescription of Bactrim was not effective, he transferred Langham to an emergency room for further treatment. Langham fails to establish that "no minimally competent professional" would have responded in a different manner than Dr. Shute. *Sain*, 512 F.3d at 895.

Additionally, any claims concerning Dr. Shute's medical malpractice or negligence, even if true, do not amount to deliberate indifference. Doctors should be "free from judicial interference" to make decisions concerning "whether and how pain associated with medical treatment should be mitigated." *Snipes v. De Tella*, 95 F.3d 586, 589 (7th Cir. 1996). A doctor's decision to forgo a more aggressive treatment plan does not raise an inference of deliberate indifference. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Dissatisfaction with a

doctor's particular prescribed course of treatment does not amount to a constitutional claim unless the medical treatment is "unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" *Id.* at 592 (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)). In *Snipes*, a prison physician treated a prisoner's toe injury promptly but in a manner not to the prisoner's liking. *Id.* at 588. The Seventh Circuit held that the prisoner's Eighth Amendment claim is "at best a questionable claim for medical malpractice and negligence" that does not amount to a constitutional injury. *Id.* at 589.

Similarly here, no evidence exists of intentional mistreatment by Dr. Shute. When Langham complained about swelling on his arm, he was seen on the same day by Dr. Shute and prescribed antibiotics to reduce the swelling. When Langham complained about the swelling a few days later, he was seen again by Dr. Shute on the same day. When Dr. Shute decided that Langham did not respond to the original course of antibiotics, he transferred Langham to an emergency room where Langham was prescribed a different set of antibiotics. Nothing in the record suggests that Dr. Shute intentionally mistreated Langham or that his treatment seriously aggravated Langham's condition. While in hindsight Langham may have preferred a prescription of the more aggressive Levaquin medication, Dr. Shute's failure to initially prescribe Levaquin does not amount to a finding of deliberate indifference. Langham's claim is "at best a questionable claim for medical malpractice and negligence" and the Eighth Amendment is "not a vehicle for bringing claims for medical malpractice." *Id.* at 589-90.

Langham's final assertion against Dr. Shute, that Dr. Shute possessed first hand knowledge of two memorandums that warned him of a possible outbreak of MRSA, is without merit. The memorandums cited by Langham were distributed to prison officials on October 24,

2007 and April 21, 2008. Since the memorandums are dated after August of 2007, Langham cannot properly claim that Dr. Shute knew of a possible outbreak of MRSA from memorandums that did not exist at the time of treatment.

Therefore, no genuine issue of material fact exists regarding Langham's claim against Dr. Shute and Dr. Shute's summary judgment motion must be granted.

   2. Claims Against Wexford, Lindorff and Elyea

      a. Claim against Wexford

Langham asserts that Wexford, as the employer of Dr. Shute, is vicariously liable for Dr. Shute's actions. Langham maintains that Wexford instituted a policy instructing its employees, including Dr. Shute, to intentionally misdiagnose patients' conditions to save money. Langham argues that Dr. Shute misdiagnosed Langham's condition on August 16, 2007, pursuant to Wexford's policy. Therefore, Langham alleges that Wexford was deliberately indifferent to the serious medical need of Langham.

In order for Langham to survive summary judgment on a § 1983 official-capacity claim, he must present "evidence demonstrating the existence of an 'official policy [or] widespread custom.'" *Grieveson,* 538 F.3d at 771 (quoting *Wagner v. Washington Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007)). Langham must also show that the "official policy or custom was the cause of the alleged constitutional violation." *Id.* at 771. Two or three incidents of an improper action by an official do not amount to a widespread practice. *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (holding that an inmate's observation of three incidents of an improper action was not sufficient to support allegations of a widespread practice); *Palmer v. Marion Cnty*, 327 F.3d 588, 595 (7th Cir. 2003) (holding that two incidents of placing inmates in an unsafe area was not enough to survive summary judgment on a widespread practice claim). In *Grieveson*, the

9

plaintiff argued that the jail's existing policy caused him to receive multiple beatings. The Seventh Circuit granted summary judgment because the plaintiff did not present any evidence demonstrating that the official's formal policy caused his injuries.

Here, Langham presented no evidence indicating how Dr. Shute's actions "was undertaken pursuant to an official jail policy or widespread custom." *Id.* at 773. While it "is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience," Langham has not demonstrated any evidence, besides his own statements, alluding to Wexford's policy. *Id.* at 774. Langham has not explained the existence or exact nature of Wexford's policy. Also, his observation of one incident of possible medical delay does not amount to a widespread practice. Langham's allegation is "not enough to foster a genuine issue of material fact that the practice was widespread" or to promote a reasonable inference that Wexford "approved, acquiesced, or encouraged" a policy of misdiagnosis. *Id.* at 775. Therefore, Wexford's summary judgment motion must be granted.

      b. Claims against Lindorff and Elyea

Langham alleges that Lindorff, as the Health Care Unit Administrator at Hill Correctional Center, required medical professionals to intentionally misdiagnose medical conditions. Langham asserts that Elyea, as the former Medical Director for the Illinois Department of Corrections, instituted a policy that resulted in Dr. Shute's misdiagnosis of Langham's condition. Although Langham never had any interaction with Lindorff or Elyea, he brings Eighth Amendment claims against them because of their supervisory positions. Langham maintains that Lindorff and Elyea's actions amount to deliberate indifference to a serious medical condition.

A plaintiff bringing a § 1983 suit must "prove that the defendant personally participated in or caused the unconstitutional actions." *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). A

prison official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions . . . unless the official knows of and disregards an excessive risk of inmate health or safety." *Farmer*, 511 U.S. at 837. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In *Grieveson*, the plaintiff claimed that jail officers knew he had a serious medical need but disregarded those needs. *Id.* at 775. The Seventh Circuit held that there was "no genuine issue of material fact" because there was "no evidence demonstrating that any of the named officers knew about" the medical needs of the plaintiff. *Id.* at 777. "Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants." *Id.* at 778.

Similarly, in *Knight v. Wiseman*, the plaintiff alleged Eighth Amendment violations against prison officials. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). The Seventh Circuit held that in the "absence of evidence showing that [the defendants] actually knew of [the plaintiff's] shoulder injury . . . it could not reasonably infer that the defendants exhibited deliberate indifference to any serious medical condition of the plaintiff." *Id.* at 464.

Here, neither Lindorff nor Elyea ever met or contacted Langham. Langham provides no evidence that Lindorff nor Elyea knew about Langham's existence or of his medical condition. Elyea resigned from his position several months before August of 2007. Langham provides no evidence, besides his own assertions, that Lindorff and Elyea instituted a policy and instructed Dr. Shute to misdiagnose patients regarding their medical injuries. Without the "specific allegations tying" Lindorff and Elyea "to the alleged constitutional conduct" of medical delay,

11

Langham does not raise a genuine issue of material fact with respect to Lindorff and Elyea. Because no evidence exists establishing that Lindorff and Elyea knew of Langham's injury and no evidence exists indicating any policy mandating misdiagnosis, there is no reasonable inference that the defendants exhibited deliberate indifference to Langham's medical condition. Therefore, Lindorff and Elyea's motion for summary judgment should be granted.

## CONCLUSION

For the reasons set forth herein, Defendants' Motions for Summary Judgment [#35, 37] are GRANTED. This matter is now terminated.

ENTERED this 18th day of July, 2011.

s/ James E. Shadid
James E. Shadid
United States District Judge